# O'CONNELL ARONOWITZ
## ATTORNEYS AT LAW

November 7, 2017

Honorable Lisa Margaret Smith
The Honorable Charles L. Brieant Jr. Federal Building
and United States Courthouse
300 Quarropas Street
Courtroom 520
White Plains, NY 10601-4150

Re: **Unsealing Search Warrants: AMA Laboratories, Inc.**
    **Case #:  17-MJ-2562**
              **17-MJ-4661**

Dear Honorable Smith:

We represent AMA Laboratories, Inc. ("AMA") regarding the above-referenced search warrants connected to an investigation currently being conducted by the U.S. Attorney in the Southern District of New York. We are submitting this letter motion to unseal the search warrants and their applicable paperwork since the case is still in the pre-indictment phase, and we have not gotten any access to the paperwork, the search warrants included.

On April 6, 2017, federal agents raided the premises of AMA in New City, New York and seized a voluminous amount of data pursuant to a search warrant that had been issued on April 5, 2017, and two additional search warrants that were obtained on the day of the search. On June 20, 2017, the agents conducted a subsequent raid on AMA premises seizing more digital and hard copy documents pursuant to three warrants that had been issued on June 19, 2017 and a subsequent search warrant that was obtained and executed on June 20.

AMA moves for the unsealing of the warrant documents (affidavits and other material presented to the neutral judicial officer to obtain the search warrants). During the execution of the warrants, the agents acted in bad faith by: 1) turning off the AMA Security Cameras; 2) preventing corporate counsel from discussing what was happening with employees and from giving legal advice to the employees; 3) interviewing witnesses whom the agents knew were represented by counsel; and, 4) conducting searches of areas not authorized by the warrant. Bad faith in the execution of warrants is relevant to AMA's motion to obtain the warrant documents.

EDWARD J. O'CONNELL
1925-1939
SAMUEL E. ARONOWITZ
1925-1973
LEWIS A. ARONOWITZ
1951-1979

CORNELIUS D. MURRAY
FRED B. WANDER
STEPHEN R. COFFEY
JEFFREY J. SHERRIN
THOMAS J. DiNOVO
PAMELA A. NICHOLS
JEFFREY A. SIEGEL
JAMI DURANTE ROGOWSKI
DAVID R. ROSS
KURT E. BRATTEN
MICHAEL P. McDERMOTT
KELLY J. MIKULLITZ
WILLIAM F. BERGLUND
ROBERT J. KOSHGARIAN
MATTHEW J. DORSEY
GEORGE R. SLINGERLAND
F. MATTHEW JACKSON

OF COUNSEL

RICHARD S. HARROW
MEREDITH H. SAVITT
PAULA. FEIGENBAUM
KEITH J. ROLAND
ARTHUR A. PASQUARIELLO
CRISTINA D. COMMISSO

ELIZABETH A. CONNOLLY
CHAD A. JEROME
SCOTT W. ISEMAN
BRITTNAY M. McMAHON
DANIELLE E. HOLLEY
KATHLEEN BYERS BROWN
MARY T. CONNOLLY
COURTNEY L. ALPERT
KELLAN B. POTTS

HOLLY E. VEGAS*
*(DIRECTOR, HEALTHCARE
CONSULTING GROUP)*

*NOT A MEMBER OF THE
LEGAL PRACTICE

54 STATE STREET • ALBANY, NY  12207 • (p) 518-462-5601 • (f) 518-462-2670
SERVICE BY FAX NOT ACCEPTED.
With offices in Albany, Latham, New York City, Plattsburgh and Saratoga Springs.
www.oalaw.com

{00102384.1}

While no indictment has been returned, the raids have understandably taken a fearful toll on the business of AMA. The toll continues to grow as the time passes. It is now almost seven months since the first search, and the awareness of the raid in the commercial community continues to wreak havoc on AMA's business. AMA seeks to obtain the warrant documents: 1) to determine what information was presented or withheld from the judicial officer about turning off the AMA security cameras; 2) to augment its own internal investigation in order to: determine If AMA is culpable, or if others acting *ultra vires*, and not AMA, were responsible for the defalcations alleged in the search warrant itself; 3) to be in a position to efficiently seek a pre-indictment resolution that leaves AMA as a viable business entity; and, 4) to address the concerns of the commercial community raised by the general awareness in that community of the government's raids. AMA is, of course, willing to abide by appropriate protective orders or redactions to alleviate governmental concerns.

**The Search Warrants**

    A.    **April Warrants**.

        i.    Warrant issued: April 5, 2017 at 1:14 p.m.

            Authorized search of: buildings 6 and 3;

        ii.    Warrant issued: April 6, 2017 at 6:28 p.m.

            Authorized search of: Special Studies Unit within building 2 (First Subject Premise)

        iii.    Warrant issued: April 6, 2017 at 6:28

            Authorized search: Low Tor Storage at 120 Rt. 9W for units 90 and 93.

        iv.    No Warrant issued: but a search, allegedly justified by the consent of Angelique Letizia, Gabe Letizia's (CEO and sole shareholder of AMA; daughter and then AMA Board Member[1]), was made of the IT Room in Building 4.

---

[1] If Ms. Letizia was either a whistle blower or informant, she may not have had the authority to consent to such a search.

B.  **June Warrants**

   i.   Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search of: Special Studies Records and for the first room on the right in building 4 (First Subject Premise) for broadly enumerated documents and "any and all records relating to a scheme to use fewer panelists than clients were promised[,]" SPF documents as well as Special Studies Records.

   ii.  Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search of: Low Tor Storage (units 90 and 93) for Special Studies Records (Second Subject Premise).

   iii. Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search: digital items in April warrant after review of ESI. (Third Subject Premise)

   iv.  Warrant issued: June 20, 2017 at 3:03 p.m.

        Authorized search of: server room in Building 4 (first door on the left) for reports of studies of RIPT, SPF Lab, Special Studies Lab, all on R drive (up to time of April searches); any documents on P drive "containing info relating to panelists in those studies and those dates."

A.  **There is a First Amendment and Common Law Right to Access Public Documents**

The First Amendment embraces a right of access to criminal trials. *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 604-605 (1982). Moreover, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Comm.*, 435 U.S. 589, 597 (1978). Thus, there are two sources of a right of access to judicial records – the First Amendment and the common law right of access. *Globe*, 457 U.S. at 604-604; *Nixon*, 435 U.S. at 597. Just last month, the Fifth Circuit recognized that warrant documents could be unsealed

on the basis of the common law right of access. *United States v. Sealed Search Warrants*, (5th Cir. No 16-20562, Decided August 21, 2017) (In cases involving a request to unseal affidavits in support of pre-indictment search warrants, district courts should exercise their discretion by balancing the right to access against the interests favoring non-disclosure) . These rights have at their core the long-held belief that the administration of justice must be open. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). The First Amendment prohibits the government from limiting the information that the public has access to receive. *Id.* at 575-576.

The purpose of the Fourth Amendment warrant requirement, according to the United States Supreme Court, is to give the subject of the search enough information to be assured that the search is legal. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Accord: *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584, 589 (D. Md. 2004); *see also Matter of Up N. Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) ("The Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge the lawfulness of that search."). In the context of these two raids, the seizure of voluminous digital and hard copies of records and documents of a substantial commercial entity, delaying the production of the warrant documents would also render the Fourth Amendment requirement of probable cause meaningless.

**B.    The Fourth Amendment Gives Cause to Unseal the Warrant Documents Pre-Indictment**

Unlike grand jury proceedings, which are cloaked with a rule of secrecy, warrant materials are not automatically sealed. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989). Typically, when the government applies for a warrant, it will also move for its warrant application and supporting papers to be sealed. The judicial officer, who issues the warrant, maintains discretion as to whether the papers ought to be sealed. *Id. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 598.

The issue before this Court is whether an entity, whose property has been seized by the government pursuant to warrant, must wait for a criminal indictment before the property owner can know the government's allegations in order to start to examine its own defenses, and explore the validity of the facts alleged to support the government's claim of criminal conduct. In short, AMA needs the warrant documents to understand the government's allegations (directed to a judicial officer) in sufficient detail to focus its own internal investigation on the relevant issues during the government's ongoing investigation. While the Second Circuit has not directly addressed the issue of whether one has a right to pre-indictment access warrant materials, other courts have found such a right.

> "While the government is free to lawfully exercise its power to execute search warrants, the persons against whom that awesome power is unleashed at least have the right to discover the basis for the exercise." *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d at 590. This principal is amplified in the context of a search conducted prior to an indictment with a likelihood of a substantial delay before such indictment issues. *Id.* at 591. In *In re Search Warrants Issued on Apr. 26, 2004*, the government argued that any right to inspect the search warrant affidavit only arises after indictment. The court in that case determined that the Fourth Amendment right to access warrant documents is unaffected by the timing of an indictment; rather, it is triggered by the government's initial search and seizure. *Id* at 590.

Several courts have held that a pre-indictment right to access search warrant materials is conferred by the Fourth Amendment. *Id* at 587; *See Matter of Up N. Plastics, Inc.*, 940 F. Supp. at 232 (concluding that a person whose property has been seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued); *See also In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995) (Stating that the Fourth Amendment right to be free of unreasonable searches and seizures includes the right to examine the affidavit that supports a warrant after the search has been conducted).

### C.    AMA's Need For the Documents Out Weighs Governmental Interest in Non-Disclosure

The right to access warrant application documents is not absolute. It must be balanced with the government's interest in nondisclosure – a decision for the courts, not the government alone. *United States v. Oliver*, 208 F.3d 211 2000 WL 263954 at *1 (4th Cir. 2000). In the unpublished Fourth Circuit opinion, *Oliver*, the court set forth a balancing test to determine when warrant materials may be released to the subject of the search: "The right of access may be denied only where the Government demonstrates "(1) that a compelling governmental interest requires the materials be kept under seal and (2) there is no less restrictive means, such as redaction, available." *Oliver*, 208 F.3d 211 at *2. Mere conclusory allegations regarding a need to protect an ongoing investigation will not satisfy the government's burden of showing a compelling need for keeping the documents sealed. In *United States v Sealed Search Warrants*, the Fifth Circuit found the district court's reason for denying the motion to unseal -- "there is a substantial probability that the investigation will be compromised if the affidavit is unsealed" -- a mere conclusory statement that did not justify the sealing. The Fifth Circuit reversed the denial, remanding for fact finding. *See Matter of Up N. Plastics, Inc.*, 940 F. Supp. at 232. "If the district court decides to seal the

documents, it must explain, giving specifics, why the sealing was necessary and why less restrictive alternatives are not appropriate." *Id.*  In short, a hearing is necessary for the court to explore the applicant's need for the supporting documents and evaluate that need against the government's (cross-examined) justification for refusing to consent to the unsealing. The government's concerns can be addressed with redactions and protective orders.

### i.    *The Government's Interest in Non-Disclosure is Insignificant*

In *Martin v. Evans*, 2017 WL 1015000 (March 13, 2017) (Slip Op at 8), plaintiffs alleged that the Massachusetts wiretap statute violated the First Amendment because it authorized criminal prosecution of those who secretly recorded police officers engaged in their duties in a public place. Plaintiffs alleged a potential criminal prosecution for secretly recording police conduct in public chilled First Amendment rights.

The federal district court in Massachusetts performed a balancing test analogous to the one this Court must perform, when it denied the defendant Boston Police Commissioner's motion to dismiss the complaint. Chief Judge Saris held, "The government does not have a significant interest in protecting the privacy of law enforcement officials discharging their duties in a public place. See *Glik* 655 F. 3d at 84 (In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights.")

### ii.   *Pre-Indictment is a Critical Time For Counsel Representing Commercial Entities*

AMA's interest in access to the warrant documents is acute and dramatic. Counsel for AMA must know at least the expressed basis of the government's raid in order to provide effective assistance of counsel.

The American Bar Association's *Criminal Justice Standards for the Defense Function* set forth defense counsel's obligations and best practices that arise "in any context in which a lawyer would reasonably understand that a criminal prosecution *could* result." *American Bar Association Criminal Justice Standards for the Defense Function* (Fourth Edition), 4-1.1(a) (emphasis added). In all cases, defense counsel has a duty to investigate and to determine whether a sufficient factual basis exists for criminal charges. *Id.* at 4-4.1(a). "Defense counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter, consequences of the criminal proceedings, and potential dispositions and penalties." *Id.* at 4-4.1(c). Counsel's initial investigation must include efforts to obtain all relevant information

Page 7                                                                 November 7, 2017

held by the prosecution and law enforcement agents, and counsel should evaluate the prosecution's evidence for inconsistencies and alternative theories. See *Id*. "Counsel has an affirmative duty to conduct appropriate investigations, both factual and legal." *Wallace v. Kern*, 392 F. Supp. 834, 846 (E.D.N.Y.), *vacated on other grounds*, 481 F.2d 621 (2d Cir. 1973); see also *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) (stating that to provide effective representation, "Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed . . . ").

While a broad allegation can be derived from some aspects of the warrant -- authorization to search and seize "all records relating to a scheme to use fewer panelists than clients were promised" -- it is the detailed facts which the government (and issuing judge) believed constituted probable cause that allows counsel to make the necessary strategic decisions to attempt to save the company. Effective assistance of Counsel, in such circumstances, means the ability to negotiate a resolution pre-indictment – a deferred prosecution or plea agreement that assures the survival of the entity. The Company's investigation may lead to exculpatory or mitigating evidence that would be relevant in any pre-indictment negotiations for resolution. The Company could find that even if a crime was committed, there is no company liability because the perpetrator was a rogue employee acting *ultra vires*. The government should not have the ability to blindfold such an internal investigation by the continued sealing of its allegations of probable cause to believe crimes were committed.

With access to those allegations, the company will be able to focus on what and how to investigate - to determine if it has viable defenses or can impeach the allegations of criminal activity. AMA has a right to judge if the warrant documents fail to establish probable cause and/or give or corroborate other grounds to suppress. Further, AMA should be able to determine if the government sought permission from a neutral judicial officer for permission to turn off the Security Cameras, or if the agents just acted on their own with no judicial authority. These are critical factors in any negotiation for a pre-indictment resolution.

Without the ability to investigate and produce mitigating or exculpatory facts, the company faces fatal economic consequences. The news of the government's raids on AMA spread quickly in the commercial community, and this news has adversely affected AMA's business. Customers advised they were moving their business to other testing labs or seeking legal redress against AMA. Forty-eight percent (48%) of former staff have quit or been laid off "as a result of both searches." (Exhibit B). Banks would not and will not extend credit. Vendors are leery. Key employees want to know the story in order to make decisions about

November 7, 2017

staying or leaving. That bad publicity -- exploited by competitors -- lingers unrebutted; because it is essentially un-rebuttable without the entity's understanding of the government's sworn basis for the raid. Until that governmental presentation is known, an entity cannot reasonably assure the public that the charges are false or take any other action to preserve its continued existence in the market place. Here the negative publicity has lingered for more than 6 months with no end of the investigation in sight[2]. The second raid on AMA in June did even more damage to AMA -- customers and employees departed simply because of the cloud that hangs over AMA with no dispersion or conclusion in sight. Unless AMA is provided access to the information that supplied the probable cause for the raids, AMA will not have an opportunity to oppose the negative consequences of the government's raid, which could likely prove the death knell for its business.

The nature of the government raids on substantial commercial entities -- where vast amounts of digital and hard copy data are seized in "white collar" investigations -- makes such a requirement that an entity or person wait until an indictment is issued totally inappropriate to meet the 21st century needs of Fourth Amendment policy.

## CONCLUSION

For the reasons expressed above, AMA's Motion to Unseal the warrant documents should be granted.

---

[2] For example, a subpoena issued to an employee for testimony and documents on June 22, 2017. That subpoena was withdrawn on June 30, 2017 when the government wrote: "As you know, we recently executed another set of search warrants at AMA. It's taking our team longer than anticipated to go through all the records that were seized pursuant to the search warrants. As a result, at this time, we are withdrawing the previously issued grand jury subpoena for Mr. \_\_\_\_\_'s testimony; [He] no longer needs to appear before the grand jury on July 19, 2017. Another subpoena likely will be issued at a future date." (Exhibit G, email from AUSA to counsel for an AMA employee).

As of this filing, no further subpoena has issued.

Very truly yours,

O'CONNELL AND ARONOWITZ

By: _____ -KBP
Richard S. Harrow, Esq.
O'Connell and Aronowitz
54 State Street, Floor 9
Albany, NY 12207

cc: AUSA Maurene Comey
300 Quarropas Street
White Plains, NY 10601
maurene.comey@usdoj.gov

AUSA Olga Zverovich
300 Quarropas Street
White Plains, NY 10601
olga.zverovich@usdoj.gov