# O'CONNELL ARONOWITZ

### ATTORNEYS AT LAW

November 10, 2017

EDWARD J. O'CONNELL
1925-1939
SAMUEL E. ARONOWITZ
1925-1973
LEWIS A. ARONOWITZ
1951-1979

CORNELIUS D. MURRAY
FRED B. WANDER
STEPHEN R. COFFEY
JEFFREY J. SHERRIN
THOMAS J. DiNOVO
PAMELA A. NICHOLS
JEFFREY A. SIEGEL
JAMI DURANTE ROGOWSKI
DAVID R. ROSS
KURT E. BRATTEN
MICHAEL P. McDERMOTT
KELLY J. MIKULLITZ
WILLIAM F. BERGLUND
ROBERT J. KOSHGARIAN
MATTHEW J. DORSEY
GEORGE R. SLINGERLAND
F. MATTHEW JACKSON

Honorable Lisa Margaret Smith
The Hon. Charles L. Brieant Jr. Federal Building
and United States Courthouse
300 Quarropas Street
Courtroom 520
White Plains, NY 10601-4150

Re:    **Unsealing Search Warrants: AMA Laboratories, Inc.**
           **Case #: 17-MJ-2562**
                    **17-MJ-4661**

Dear Honorable Smith:

OF COUNSEL

RICHARD S. HARROW
MEREDITH H. SAVITT
PAUL A. FEIGENBAUM
KEITH J. ROLAND
ARTHUR A. PASQUARIELLO
CRISTINA D. COMMISSO

ELIZABETH A. CONNOLLY
CHAD A. JEROME
SCOTT W. ISEMAN
BRITTNAY M. McMAHON
DANIELLE E. HOLLEY
KATHLEEN EVERS BROWN
MARY T. CONNOLLY
COURTNEY L. ALPERT
KELLAN B. POTTS

HOLLY E. VEGAS*
(DIRECTOR, HEALTHCARE
CONSULTING GROUP)

*NOT A MEMBER OF THE
LEGAL PRACTICE

    We represent AMA Laboratories, Inc. ("AMA") regarding the above-referenced search warrants connected to an investigation currently being conducted by the U.S. Attorney in the Southern District of New York. We are submitting this letter motion to enjoin the introduction of evidence to the Grand Jury that was obtained in violation of AMA's constitutional rights. Since the case is still in the pre-indictment phase, we are submitting this motion through a letter motion, and not through PACER.

    On April 6, 2017, federal agents raided the premises of AMA in New City, New York and seized a voluminous amount of data pursuant to a search warrant that had been issued on April 5, 2017, and two additional search warrants that were obtained on the day of the search.  On June 20, 2017, the agents conducted a subsequent raid on AMA premises seizing more digital and hard copy documents pursuant to three warrants that had been issued on June 19, 2017 and a subsequent search warrant that was obtained and executed on June 20.

    AMA moves for an injunction enjoining the introduction of unlawfully seized evidence to the Grand Jury because it was obtained in violation of AMA's constitutional rights.  During the execution of the warrants, the agents acted in bad faith by: 1) turning off the AMA Security Cameras; 2) preventing corporate counsel from discussing what was happening with employees and from giving legal advice to the employees; 3) interviewing witnesses whom the agents knew were represented by counsel; and, 4) conducting searches of areas not authorized by the warrant. Bad faith in the execution of warrants is relevant to AMA's motion to enjoin the introduction of unlawfully seized evidence.

54 STATE STREET • ALBANY, NY 12207 • (p) 518-462-5601 • (f) 518-462-2670
*SERVICE BY FAX NOT ACCEPTED.*
*With offices in Albany, Latham, New York City, Plattsburgh and Saratoga Springs.*
{00106071.1}                                    www.oalaw.com

Page 2                                                    November 10, 2017

    The Supreme Court held that a witness or third party may seek to enjoin the presentation of unlawfully seized evidence to the Grand Jury. "[I]f evidence is taken by government officials in violation of a person's Fourth or Fifth Amendment rights, he is entitled to institute proceedings in anticipation of an indictment, to restrain the use of the evidence against him." *Austin v. United States*, 297 F.2d 356, 358 (4th Cir. 1961) (citing *Perlman v. United States*, 247 U.S. 7 (1918)). The Supreme Court was "unable to concur" with the position that an individual would be "powerless to avert the mischief" of allowing unlawfully seized evidence being presented to a Grand Jury, and instead, must "accept its incidence and seek a remedy at some other time and in some other way." *See Perlman*, 247 U.S. at 13. It is clear from the case law that an individual may bring an action to seek enjoinment of presentation of unlawfully seized evidence to a Grand Jury, and in AMA's case, the behavior of the government agents executing the raid demand that the government be enjoined from introducing any evidence to the Grand Jury that was unlawfully seized.

## 1.  THE SEARCH WARRANTS

### A.  April Warrants

i.      Warrant issued: April 5, 2017 at 1:14 p.m.

        Authorized search of: buildings 6 and 3;

ii.     Warrant issued: April 6, 2017 at 6:28 p.m.

        Authorized search of: Special Studies Unit within building 2 (First Subject Premise)

iii.    Warrant issued: April 6, 2017 at 6:28

        Authorized search: Low Tor Storage at 120 Rt. 9W for units 90 and 93.

iv.     No Warrant issued: but a search, allegedly justified by the consent of Angelique Letizia, Gabe Letizia's (CEO and sole shareholder of

November 10, 2017

AMA; daughter and then AMA Board Member[1]), was made of the IT Room in Building 4.

**B.**       **June Warrants**

    i.       Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search of: Special Studies Records and for the first room on the right in building 4 (First Subject Premise) for broadly enumerated documents and "any and all records relating to a scheme to use fewer panelists than clients were promised[,]" SPF documents as well as Special Studies Records.

    ii.      Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search of: Low Tor Storage (units 90 and 93) for Special Studies Records (Second Subject Premise).

    iii.     Warrant issued: June 19, 2017 at 5:17 p.m.

        Authorized search: digital items in April warrant after review of ESI. (Third Subject Premise)

    iv.     Warrant issued: June 20, 2017 at 3:03 p.m.

        Authorized search of: server room in Building 4 (first door on the left) for reports of studies of RIPT, SPF Lab, Special Studies Lab, all on R drive (up to time of April searches); any documents on P drive "containing info relating to panelists in those studies and those dates."

### 2.  AMA'S FACTUAL ASSERTIONS

**A.**       **Background of AMA**

---

[1] If Ms. Letizia was either a whistle blower or informant, she may not have had the authority to consent to such a search.

November 10, 2017

AMA Laboratories, Inc. (AMA) was founded in 1982 by Gabriel J Letizia (Gabe) as a consulting organization to the Cosmetics, Over the Counter (OTC) Drug and Medical Device industries. Gabe has studied the science necessary to make him a respected pioneer in the industry. AMA moved to its present campus in New City, New York in 1984. That campus has expanded from a single building to the current six one-story buildings.

Five of the six buildings are constantly monitored by fixed security cameras. The cameras also monitor the parking areas. There are 99 cameras that cover the 5 buildings, which are on at all times, and are monitored by the employee in charge of security. Thus, there is constant surveillance. The cameras and surveillance are for the safety of the employees. The panelists are of unknown character and so the cameras keep track of the panelists. Also, the video recordings protect against false claims by panelists or employees (workman's comp) against AMA and provide clients with the confidence of confidentiality -- protecting the new products of AMA's clients.

On April 5, 2017 – the day prior to the first raid by the government agents to execute search warrants – AMA had a full complement employees in a long standing business that enjoyed a superior reputation. (See Exhibit H, an organizational chart of AMA as of the day before the April 6 government raid). Today, AMA has only slightly more than half of those employees still working (See Exhibit B).

### B.   The Agents Required AMA To Turn Off the Security Cameras

The FBI had required AMA personnel to turn off all of the security cameras in all AMA buildings on April 6, 2017. (Exhibit A, sworn statement Donald Seidel, with photograph, referring to both April and June demands to turn off security cameras)

### C.   The Agents Told Employees that AMA Would Be Put Out Of Business

The federal agents who conducted the search also interviewed employees on April 6, 2017. During the questioning of employees, as an investigative technique to persuade employees to give incriminating information, the agents asserted that AMA was criminal, and would soon be put out of business.

Several employees working on specific projects were told that AMA's sole shareholder, Gabe was going to jail, and that AMA was to be closed. An accounting employee was told the same thing. An IT employee was told that the investigation is concluding and Gabe would be going to jail. (Exhibit B, affidavit of Prisana Thunyahkulsajja).

On June 20, at 5:30 p.m. the agents went to the home of AMA employee, Donna Muratschew, ostensibly to serve her with a federal grand jury subpoena.  After Ms. Phyllis E. Simon, Esq. had been retained by Ms. Muratschew in April (after the first searches), Ms. Simon had several contacts with the United States Attorney's Office (USAO).  Specifically on May 2, 2017, she spoke with one of the AUSAs handling the case, making that AUSA aware of her representation of Ms. Muratschew. (Exhibit C, Attorney Affirmation of Phyllis E. Simon).  On June 20, (obviously after the close of business) the agents did not just serve the subpoena. In an effort to extract information that the agents thought would support a government prosecution, the agents denigrated the motives of Gabe, by claiming "Gabe is taking care of Gabe" (repeated twice) and "The window of opportunity is closing, all seats will be taken." [Exhibit D, affidavit of Walter Muratschew, Donna's husband dated June 30, 2017].  When Ms. Simon remonstrated and advised the AUSA that her client would exercise her Fifth Amendment privilege in the grand jury, she received a letter advising her that her client had become a target. (Exhibit C).

### D.   AMA's Counsel Was Prohibited from Consulting With Employees

David Resnick was AMA's corporate counsel.  He was advised of the beginning of the search, and immediately came to AMA's campus on April 6, 2017.  The government agents prohibited him from consulting with employees, offering counsel, and advising the employees about their rights and obligations. (Exhibit E, certification of David Resnick, Esq.).  One of house counsel's legitimate duties when the government conducts a raid to execute search warrants, as the government did on April 6, 2017, is to advise the company's employees as to their rights and obligations.  Mark Srere, in his article "Top 10 Things To Do if the Government Comes Knocking With a Search Warrant", 101 Cr.L Rptr 665 (September 27, 2017) explains that the company counsel must

> [a]dvise all employees that agents may attempt to ask questions regarding the documents being searched and seized, as well as other information about the company. Remind employees that they are permitted, but not required, to speak with the agents, they have a right to decline being interviewed, they have a right to be represented during any questioning, and that the company will provide counsel for employees if they wish.

*Id.*

If corporate counsel had been able to consult with the employees and advise, it is doubtful if the agents would have been as heavy handed with attempting to create government witnesses as the witnesses describe the agents were.

November 10, 2017

The iniative to interrogate a represented witness in the absence of her counsel (Muratschew-Simon) is relevant to help the Court determine whether keeping lawyers from being with clients, who were being, or to be, interviewed is an intentional (but unconstitutional) government strategy.

>    **E.    The Agents Required AMA To Turn Off the Security Cameras**

The agents required that the Security Cameras be turned off on June 20, 2016. (Exhibit A).

>    **F.    The Agents Conducted a Search of Building One, Unauthorized By**
>    **Warrant, Probable Cause, or Exigent Circumstances**

No warrant -- whether issued in April or June -- authorized the agents to conduct any search in Building One. Nevertheless, the agents interviewed Dominique Godfrey, an Administrative Assistant, who worked in Building One. The Agents asked for her by name. The agents instructed Ms. Godfrey to show them around Building One. "We started in the Building 1 multiport room…" (Exhibit F, sworn handwritten statement of Dominque Godfrey). She was questioned about whether certain documents existed and where documents were stored. The agents disguised the illegal search by having Ms. Godfrey open drawers and folders, look through the folders, and advise of the contents, and not touching the documents themselves. The agents then required Ms. Godfrey to take them to the second floor of Building One, where they looked in each of the offices (inquired whose offices they were), and questioned Ms. Godfrey about the contents of documents in the offices after requiring her to review them. Ms. Godfrey was asked to identify the employee who had worked at AMA the longest. Ms. Godfrey identified Jaime Reidy. The agents then requested Ms. Reidy to provide another tour of Building One, as Ms. Godfrey had done. *Id.*

Should the government dispute any of these facts, a hearing to determine credibility is required.

>    **3.  REQUIRING SECURITY CAMERAS TO BE TURNED OFF IS A**
>    **CONSTITUTIONAL VIOLATION**

Justice Brandeis made his famous statement that "sunlight is said to be the best of disinfectants" in a 1913 *Harper's Weekly* article, entitled "What Publicity Can Do."   In this

case, the security cameras at AMA represent the sunlight that would have given transparency to the government's actions during the searches and seizures had they not been turned off.

On July 7, 2017, the Third Circuit held that "The First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public." *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017). The Circuit found that the First Amendment "protects the public's right to access to information about their officials' public activities" *Id.* at 359, and therefore bars the government from "limiting the stock of information from which members of the public may draw." *Id.* Security cameras in place at a commercial entity where search warrants are being executed present fewer law enforcement concerns than a person photographing police activity in a public place such as a town square.

The Third Circuit's holding in *Fields* conforms to the holdings of all the other circuit courts that have considered the issue -- The First Amendment protects the right to photograph, film or video police conduct in public. See *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

Critically, the Third Circuit wrote,
> There is no practical difference between allowing police to prevent people from taking recordings and actually banning the possession or distribution of them. See *Alvarez*, 679 F.3d at 596 ("Restricting the use of an audio or audiovisual recording device suppresses speech just as effectively as restricting the dissemination of the resulting recording."); see also Cato Institute Amicus Br. 7 ("[B]oth precedent and first principles demonstrate that the First Amendment protects the process of capturing inputs that may yield expression, not just the final act of expression itself.")

*Fields v. City of Philadelphia*, 862 F.3d at 358.

The video, or in our case, the security cameras recording, is superior to any oral testimony about the government's conduct during the search.

November 10, 2017

> To record what there is the right for the eye to see or the ear to hear
> corroborates or lays aside subjective impressions for objective
> facts. Hence to record is to see and hear more accurately.
> Recordings also facilitate discussion because of the ease in which
> they can be widely distributed via different forms of media.
> Accordingly, <u>recording police activity in public falls squarely
> within the First Amendment right of access to information.</u> As no
> doubt the press has this right, so does the public. See *PG Publ'g.
> Co. v. Aichele,* 705 F.3d 91, 99 (3d Cir. 2013); *Branzburg v.
> Hayes,* 408 U.S. 665, 684 (1972).

> *Id.* at 359. (Emphasis added)

There is no doubt that the government committed a constitutional violation when
requiring the AMA security cameras be turned off to prevent an objective record of the
government's conduct during the search and seizure. The only reason for law enforcement to
have turned off the security cameras is to suppress inconvenient truths -- depictions of dubious or
potentially embarrassing actions. Pennsylvania Law School Professor Seth F. Kreimer explains
in his seminal article, "Pervasive Image Capture and the First Amendment: Memory, Discourse
and the Right to Record", 159 *U. Pa. L. Rev.* 335, 383 (2011):

> The typical police officer... is not concerned with
> avoiding observation or preserving seclusion simpliciter.
> She is interested, rather, in assuring that evidence of
> dubious or potentially embarrassing actions is not
> credibly conveyed by the observer to a wider audience
> by transmission of the captured image. ... <u>Prohibitions
> on image capture are deployed to suppress inconvenient
> truths. ...</u>

*Id.* at 383. (Citations Omitted) (Emphasis added)

> Where the government seeks to suppress image capture in
> the interests of privacy, at a minimum the intervention
> must be framed by legal rules that limit the intervention
> to the scope of an authoritatively defined public interest
> and that provide adequate standards for official decision.
> Obviously, raw exertion of official power does not meet
> this standard;

Page 9                                                            November 10, 2017

*Id.* at 393-4. (Citations Omitted)

The facts asserted by AMA (see Point III, *supra,* at 3) are the very type of "dubious or potentially embarrassing" "inconvenient truths" that the government sought to suppress by requiring the security cameras be turned off.  The government is now free to dispute those facts - - as it might not have been able to do if the security cameras had remained active.

<strong>CONCLUSION</strong>

For the reasons expressed above, AMA's motion to enjoin the introduction of unlawfully seized evidence to the Grand Jury should be granted.

Very truly yours,

O'CONNELL AND ARONOWITZ

By:

                                                          ─ KBP
Richard S. Harrow, Esq.
O'Connell and Aronowitz
54 State Street, Floor 9
Albany, NY 12207

cc:     AUSA Maurene Comey
        300 Quarropas Street
        White Plains, NY 10601
        maurene.comey@usdoj.gov

        AUSA Olga Zverovich
        300 Quarropas Street
        White Plains, NY 10601
        olga.zverovich@usdoj.gov






On 4/06/2017 the FBI on their own powered of the cameras in Building 6. At that time we were called by Anthony Schembri to help with the shutdown of the other cameras. A woman from the FBI walked with me to the other unit as a powered it off; the unit that was turned off was Building 3 (RIPT).

On 6/20/2017 the FBI agent male the one on the picture walked over to us in front of building 5 and asked if we can shutdown cameras in the follow buildings: 1, 4, and 6. The agent was a male in his 40s and had an FBI jacket. He walked with me to building 6 and to the other building as I turn them off.

Signed & Sworn to before me this 26th day June 2017 at
Rockland County, N.Y.

THOMAS C. CREELMAN
Notary Public, State of New York
No. 41-4789866
Qualified in Queens County
Commission Expires 11-30-1

2017-06-26 14:15:25          6/26/17



September 7, 2017

I, Prisana Thunyahkulsajja, hold the position of Executive Coordinator at AMA Research Laboratories, for the past approximately 3.5 years (October 14, 2013).

As a result of an investigation subsequent to the April 6, 2017 search and seizure at 216 Congers Road, New City, NY I have learned the following:

- Several SPF employees were advised by the authorities that Gabriel J. Letizia (Gabe), Executive Director, will be going to jail and that AMA is to be closed.
- An accounting employee was advised that Gabe Letizia would be going to jail and the business closed.
- An IT employee was advised the investigation was concluding and that Gabe would be going to jail.

As part of my job I deal with customers of AMA who I arrange to have invoiced for services which I help develop. After the search, many of those customers have advised they were moving their business to other testing labs and/or seeking legal remedies against AMA because they had heard that the government was going to close AMA.

To date at least 48% of the former staff is no longer here or have quit, been fired or laid off as a result of both searches.

_____
Prisana Thunyahkulsajja
Executive Coordinator


_____
Thomas C. Creelman
Notary Public

THOMAS C. CREELMAN
Notary Public, State of New York
No. 41-4789866
Qualified in Queens County
Commission Expires 11-30-17

Signed & Sworn to before me this 7th day of September 2017 in Rockland County, New York.




STATE OF NEW YORK                                     ATTORNEY'S AFFIRMATION
COUNTY OF ROCKLAND

PHYLLIS E. SIMON  an attorney admitted to practice law in the Courts of the State of New York affirms

the following under penalties of perjury:

1. I represent  DONNA MURATSCHEW, and my retainer agreement with her is dated April 20, 2017.

2. In the course of my representation I have had several contacts with the U.S. Attorney's Office,

specifically with Olga Zverovich, Esq.  I spoke to Ms. Zverovich on or about May 2, 2017 after her

contact information was provided to my client.  I specifically told her that I represented Dr. Muratschew

so she was completely aware that any further contact with  Dr. Muratschew was  to be through me.

3. On June 20, 2017, at approximately 5:30 PM, Dr. Muratschew was served a subpoena to appear

before the Federal Grand Jury. I was not in any fashion notified that there was to be a subpoena

issued or served and  no attempt was made to contact me prior to the service. The federal agents

serving her attempted to speak with her and enlist her cooperation.   Her husband Walter Muratschew

was present at the time service was made, witnessed the service, heard the conversation that agents

attempted to have with Dr.  Muratschew and prepared a contemporaneous memorandum of the event.

4. I contacted Ms. Zverovich  as soon as I was made aware of the subpoena  and told her my client

would  not testify and would  instead exercise her Fifth Amendment rights.

5. Several days later I received a letter dated June 29, 2017 informing me that my client's appearance

was excused, but she was now considered a "target of the investigation". Further proof that the US

Attorney's Office was aware of the representation.

Dated:  New City, NY
         September 8, 2017

                                    PHYLLIS E. SIMON,
                                    Attorney for Donna Muratschew




**STATE OF NEW JERSEY** )
**COUNTY OF BERGEN** ) SS:

I **WALTER MURATSCHEW** affirm the following under penalties of perjury:

1. I reside at 93 James Street, Westwood, NJ and am the spouse of Donna Muratschew.

2. On June 20, 2017 at approximately 5:30 PM an two unknown persons showed up at the house, asked for Donna Muratschew and presented her with a subpoena to appear before a federal Grand Jury.

3. In the course of serving the subpoena one of the people serving the subpoena made the following utterance:

"The window of opportunity is closing, all seats will be taken".

The other person said:

"Gabe is taking care of Gabe". This was repeated twice.

4. As soon as the process servers left, I went inside and wrote down the words that he spoke on a piece of my stationery so I would remember them clearly.

WALTER MURATSCHEW

Sworn to before me this
30 Day of July, 2017.

Notary Public

AVTAR SINGH
Notary Public
State of New Jersey
My Commission Expires April 6, 2021
I.D.# 2407052

# FAX COVER SHEET
## July 6 2017

FROM: PHYLLIS E. SIMON, ESQ.
          25 Finch Road
          New City, NY 10956
          Phone: (845) 634-7947
          FAX: (845) 638-6557
•         E-MAIL: peslawny@aol.com

TO:   George Weinbaum, Esq..
       FAX: 914 686-4873

SUBJECT: AMA
NO. PAGES: incl cover 2
Hello:
Please see attached.:

Phyllis Simon




# Affidavit

State of New York      )
                       ) ss.:
County of Rockland     )

I, David J. Resnick, being duly sworn, deposes and says:

**1.**      I am an attorney duly admitted to the practice of law in New York State.

**2.**      I have served as Corporate Counsel to AMA Laboratories, Inc. (hereinafter "AMA").

**3.**      On April 6, 2017, at 9:00 AM, while I was engaged as Corporate Counsel for AMA, a team of Federal Agents entered the AMA corporate premises at 216 Congers Road, New City, NY  10956 and announced they were conducting a search of the AMA premises; whereupon, I responded to the AMA premises and requested a copy of the Search Warrant be produced to me.  (The Search Warrant was produced to me without Schedule A which was not immediately available).

**4.**      On April 6, 2017, without AMA permission or consent, the Federal Agents disengaged the AMA recording system that conducted video surveillance of the AMA premises and they refused to permit me to watch the conduct of their search.

**5.**      On April 6, 2017, without AMA permission or consent, the Federal Agents conducted interviews of corporate employees on the AMA premises and, when I attempted to gain access to those employees, I was prevented and denied access by the Federal Agents.

**6.**      On April 6, 2017, I had a legal responsibility to AMA and the right to observe the conduct of the Federal Agents' search and any Federal Agents' interviews of AMA employees that were conducted on AMA premises and in fulfillment of that I was threatened with arrest.

**7.**      I supply this Affidavit without any expectation of pecuniary or other benefit based on the testimony given or based on the outcome obtained from the use of this Affidavit.  To the contrary, I am paid as an attorney providing professional services for my time and I am paid solely for that time.

David J. Resnick

Sworn to before me this
7th day of September, 2017

Notary Public

JOHN D MACCARTNEY, JR.
Notary Public, State of New York
Reg. No. 02MA7645750
Comm. Exp. Oct. 6, 2017




My name is Dominique Godfrey. I am an Administrative Assistant @ AMA Laboratories. On Tuesday, June 20th the FBI & FDA agents came to AMA with warrants to search our Building. They said that they would be searching building 1 + 4. One female FDA agent asked for me by name as well as our QA/QC department (Tasmiya Masud + Christian Gorglione). Tasmiya is on vacation + Christian no longer works here. They asked me what my job title is and how long I've worked here. They also wanted to know where the SPF dept. was located and had me show two of the other officers around. We started in the Building 1 Multi-port room where they asked if all the reports were current and if there was anything from before April 6th, 2017. They would not touch anything in any of the rooms but had me flip through several folders which only contained data + tables - no reports. They asked if I would open some of the drawers in the Bldg. 1 Multipod room as well as a few of the boxes stacked in the corner but they did not contain anything. All reports were current and from what I saw none were dated from before April 6th.

①

Once we left the multi-port room they
they asked if the SPF dept. was
upstairs and wanted to see upstairs
as well. They looked in each of the
offices upstairs and proceeded to ask
if any of the report folders were
from before April 6th, which again
the few that I flipped through
were all current data. They would
not touch anything and did not
double-check anything that I had
flipped through to check the date.
They asked who whos offices were
whos and then asked me who has
worked here the longest that was
currently here. I said I wasn't sure
but possibley Jaimie and then they
asked her if she would lead them
through Building 1 as I just had.

Godfrey   6·22·17

Signed & Sworn to before me this 22nd day of
June, 2017 in Rockland County

Thomas C. Creelman

THOMAS C. CREELMAN
Notary Public, State of New York
No. 41-4789865
Qualified in Queens County
Commission Expires   11/30/17

②

# Organizational Chart – AMA Laboratories, Inc.






Joel Drotch
B.B.A.
**Admin Assistant/Purchasing**

Gabriel J. Letizia
Ph.D.
**Executive Director**

PrisanaThunyahkulsajja
A.S.(B.B.A Candidate)
**Executive Coordinator**

Edwin Leonard
B.S.
**Director Global Sales**

Joe L. Pfeiffer
B.S.
**Administrative Finance**

David R. Winne
B.S., M.S. (Candidate)
**Technical Director**

Donald C. Seidel
B.S.
**Systems Engineer**

Brian Ecclefield
B.A.
**International Sales Manager**

Tara Lamantia
B.S.
**Admin Assistant/Finance**

Albert Lukin
B.S.
**Director of Operations/ISO Management Representative**

Roman Swituszak
A.A.S.
**Systems Manager**

Mayya Tatsene
M.D.
**Clinical Laboratory Director**

Donna Muratschew
M.D.
**Clinical Studies Director**

Patrycja Wojtowicz M.S.
**Associate Director of Clinical Studies**

Alex Letizia
B.A.(MBA Candidate)
**3D Director/Project Manager**

Nicole Drost
A.A., B.A (Candidate)
**Scientific Liaison Officer**

Kamil Wojtowicz M.S.
**Technical Support Manager/ Quality Assurance**

Kaitlyn Gold
B.S.N. (Candidate)
**Supervising Lab Technician**

Christine A. Garon
B.A. (Candidate)
**Lab Technician**

Ryan Berry
A.A (Candidate)
**3D Coordinator/Machine Fabricator**

Anvelina A. Abreu
B.A.(MBA Candidate)
**Administrative Assistant**

Marcin Skolik
M.S.
**Scientific Research Engineer/ Quality Assurance**

Erica Petrillo
B.S.
**Lab Technician**

Chrystal Planeta
B.S.
**Lab Technician**

Emma Cipriani
A.A.
**Administrative Assistant**

Tasmiya Masud
B.A.
**Quality Assurance**

Jaime Reidy
A.A.
**Lab Technician**

Joe Healy
B.S.
**Engineer/ Fabricator**

Nicole Ruscitti
B.S.
**Supervising Lab Technician**

Marissa Firday
B.A.
**Administrative Assistant**

Christian Gorglione
B.S.
**Quality Assurance**

Tara Grube
B.S.
**Lab Technician**

Henry Lopez
M.A.
**Lab Technician**

Angelique Letizia
NYFA Graduate/A.L.A. (Candidate)
**Film & Advertising Director**

Joe Capozzi
B.A
**Film & Video Supervisor**

Lab Support Staff

Katharine Lipnicky
B.S.
**Lab Technician**

Adrianna Tubito
Medical Assistant NCCT Certified
**Lab Technician**

Dominique Godfrey
A.L.A.
**Administrative Assistant**

Jennifer Schiano
B.F.A.
**Photographer**

Neil Zimbaldi
A.A. (Candidate)
**Multimedia  Coordinator**

Ashley Martini
B.B.A.
**Administrative Assistant**

Lisa Hayden
B.S.
**Lab Technician**

Kamille Valero
B.S.
**Lab Technician**

Kevin Heady
A.A.S.
**Graphics & Design Coordinator**

Dominika Dudek
B.A.
**Administrative Assistant**

Erica Martinez
B.S.
**Lab Technician**

Amanda Schule
B.S.
**Lab Technician**